HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLARENDON AMERICAN INSURANCE COMPANY,

    Plaintiff,

v.

JAI THAI ENTERPRISES, LLC, et al.,

    Defendants.

CASE NO. C08-1565RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion for partial summary judgment (Dkt. # 12) from Plaintiff Clarendon American Insurance Company ("Clarendon"), and a motion (Dkt. # 21) from Defendants to amend their answer to assert new counterclaims. Although the parties have requested oral argument on the summary judgment motion, the court finds argument unnecessary in light of Defendants' failure to offer a substantive opposition to that motion. For the reasons stated herein, the court GRANTS the motion for summary judgment (Dkt. # 12) in part and DENIES it in part, GRANTS the motion to amend (Dkt. # 21), and directs the parties to meet and confer regarding the case schedule.

## II. BACKGROUND

This dispute arises out of a March 2006 assault on Deniss Semcovs and Aleksandr Vasilenko at the Jai Thai restaurant located on First Avenue in Seattle. At the time, a Clarendon insurance policy ("Policy") issued to Defendants Jai Thai Enterprises, LLC,

ORDER – 1

Duangjit L. Alberts, and Thunyapong Limparangsri (collectively "Jai Thai") provided general commercial liability coverage at the restaurant.

There is no dispute that on the night of the assault, Jai Thai was hosting a weekly "Eastern European Night." Jai Thai contracted with two men (known only as Vlad and Dmitry) to host and promote the event. The two men in turn hired Island Boys Security to provide security guards for the event.

Mr. Semcovs, Mr. Vasilenko, Vicky Zhuk, and Lena Vasilenko sued Jai Thai in King County Superior Court for damages arising out of the assault. Mr. Semcovs and Mr. Vasilenko alleged that Jai Thai was negligent in failing to protect them from the persons who assaulted them, and for serving alcohol to their already intoxicated assailants. Mr. Semcovs, who suffered the most serious injuries, also claimed that Jai Thai was negligent in failing to summon medical aid for him. Ms. Zhuk and Ms. Vasilenko, who accompanied the two men on the night of the assault, sued for negligent infliction of emotional distress arising from witnessing the assault.

Clarendon agreed to defend Jai Thai in the state court lawsuit subject to a reservation of rights. While providing a defense, it brought this action for a declaratory judgment that it had no duty to defend or indemnify Jai Thai. The state court lawsuit settled in early February 2009, with Jai Thai assigning its rights under the Clarendon policy to the four state court plaintiffs, who are also Defendants in this action. Dkt. # 21, Ex. 2 (settlement agreement).

Clarendon seeks partial summary judgment that it owes Jai Thai neither a duty to defend nor a duty to indemnify. Defendants move to amend their answer to assert counterclaims against Clarendon for breach of its duty to defend and for bad faith. The court now turns to both motions.

### III. ANALYSIS

The court begins with Clarendon's summary judgment motion. Clarendon asserts that Jai Thai breached a Policy provision requiring Jai That to ensure that any security

ORDER – 2

guards it hired had specified insurance under which Jai Thai was an additional insured, and would agree to defend Jai Thai and hold it harmless for certain types of negligence arising from the conduct of the security guards. It is undisputed that the security guards at Jai Thai on the night of the assault provided neither liability insurance nor a hold harmless agreement. The Policy deems its coverage to be excess over any other available insurance, and declares that Clarendon has no duty to defend when its insurance is excess. The court will examine the relevant portion of the Policy in detail, but for now it suffices to note Clarendon's principal assertion: had Jai Thai not breached the security-guard-related additional insurance provision, Clarendon would neither have needed to pay for Jai Thai's defense in the state court suit nor to indemnify Jai Thai.

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in answering legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

Much of the familiar summary judgment standard applies awkwardly to this motion, because Jai Thai failed to oppose it. For reasons not apparent from the record, Jai Thai offered no opposition to any of Clarendon's arguments on summary judgment. Instead, it invoked Fed. R. Civ. P. 56(f), requesting that the court continue the summary judgment motion for 90 days while it obtained additional discovery.

ORDER – 3

The court will turn first to Jai Thai's Rule 56(f) request, which it will deny. The court will then turn to Clarendon's unopposed summary judgment motion.

**A. The Court Denies Jai Thai's Rule 56(f) Motion and Considers Clarendon's Summary Judgment Motion to be Unopposed.**

Rule 56(f) gives a court discretion to either deny or continue a summary judgment motion where the non-moving party needs additional discovery to "present facts essential to justify its opposition." Fed. R. Civ. P. 56(f); *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001) ("We review for abuse of discretion a district court's refusal to permit further discovery before ruling on a summary judgment motion."). The party seeking additional discovery bears the burden to show that the evidence it seeks "would prevent summary judgment." *Id.*; *see also Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) ("A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment.").

Jai Thai fails to explain why the additional discovery it seeks would prevent the court from granting Clarendon's summary judgment motion. The only proposed discovery that Jai Thai identifies in its Rule 56(f) motion is discovery into whether Clarendon timely informed Jai Thai's defense counsel in the state court action that it was defending under a reservation of rights. Jai Thai asserts that this discovery will support its assertion that Clarendon acted in bad faith, and potentially estop Clarendon from denying its duty to defend. What Jai Thai fails to assert is that the identified discovery has any bearing on the issues presented in Clarendon's summary judgment motion. At best, the additional discovery would give Jai Thai an estoppel defense that could bar Clarendon from denying its duty to defend. Even under the most charitable view of the discovery, however, it would not prevent Clarendon from relying on Jai Thai's breach of the Policy as a basis for denying coverage to Jai Thai. For that reason, Jai Thai's failure

ORDER – 4

to oppose the instant summary judgment motion, which is based entirely on the consequences of Jai Thai's breach of the Policy, is inexplicable.[1]

The court observes, moreover, that Jai Thai's inaction in this case belies its assertion that additional discovery would assist it in defeating the summary judgment motion. Jai Thai filed its Rule 56(f) request on January 26, 2009, requesting a 90-day continuance of the summary judgment motion to permit additional discovery. Since that request, more than 120 days have passed, during which Jai Thai has had every opportunity to pursue discovery. Nonetheless, Jai Thai has offered nothing whatsoever to oppose the summary judgment motion.

Jai Thai's failure to oppose Clarendon's summary judgment motion does not mean that the court can simply grant it. This court's local rules permit it to consider a party's failure to oppose a motion "as an admission that the motion has merit." Local Rules W.D. Wash. CR 7(b)(2). A court cannot, however, grant a summary judgment motion merely because it is unopposed, even where its local rules might permit it. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 949-50 (9th Cir. 1993). Even without an opposition, the court must apply standards consistent with Fed. R. Civ. P. 56, determining if the moving party's motion demonstrates that there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Id.* at 950.

**B. Although Clarendon Has Established a Breach of the Policy as a Matter of Law, It Has Not Established That The Breach Voids the Policy or Otherwise Extinguishes Clarendon's Duty to Defend and Indemnify.**

**1. Jai Thai Breached the Policy as a Matter of Law.**

Clarendon's evidence establishes as a matter of law that Jai Thai breached its agreement to ensure that security guards it hired had appropriate insurance. The

---

[1] In addition to Jai Thai's failure to provide any explanation for how discovery would help it oppose the summary judgment motion, the court notes that its Rule 56(f) request virtually ignores Ninth Circuit and Washington law in favor of law from other states and circuits. The court expects pertinent citation to relevant legal authority, and cautions Jai Thai to provide it in future submissions to the court.

ORDER – 5

agreement ("Security Guard Clause"), located in Clarendon's "Breach of Representations and Warranties Endorsement" to the Policy, provides as follows:

> The Named Insured [must] require[] that all security guards maintain commercial general liability insurance issued by an "A" rated or better domestic carrier on the following terms:
>
> a. Limits of Insurance equal to or greater than the limits provided by this policy;
> b. Coverage at least as broad as the insurance coverage afforded by this policy;
> c. Contractual liability coverage, including but not limited to tort liability assumed in a written contract; and
> d. Coverage for the named Insured as an additional insured.
>
> The Named Insured [must] further verif[y] the existence of such other coverage by obtaining copies of the security guard's Certificates of Insurance and the Declarations Page.
>
> In addition, the Named Insured [must] ha[ve] a written contract or agreement with all security guards which includes a hold harmless and indemnification provision requiring said security guard to defend and indemnify all insureds for all losses and expenses of whatsoever nature as respects any claim(s) arising out of or resulting from (i) the negligence of the security guards in the rendering or failing to render goods or services and (ii) the negligence of the named insured.

Policy, Endorsement MWA220, at 2.[2] There is apparently no dispute that neither the security guards working at Jai Thai on the night of the assault nor the two men who hired them had insurance that complied with the Security Guard Clause. In a deposition in the state court action, the manager of the Jai Thai restaurant admits that he made no effort to verify whether either the security guards hired on the night of the assault had insurance of any kind. DeWeese Decl., Ex. 4 at 79 (J. Davis deposition).

The question before the court is not whether Jai Thai breached the Security Guard Clause, but what consequences flow from that breach. Clarendon insists that the breach relieves it of any obligation to defend or indemnify Jai Thai for losses arising out of the assault. For several reasons, Clarendon has failed to establish that it is correct as a matter of law.

---

[2] All citations to the Policy are to the version attached to Clarendon's complaint (Dkt. # 1).

ORDER – 6

## 2. Washington Law Governs the Policy.

As an initial matter, the court rejects Clarendon's argument that a choice-of-law clause in the Policy that selects Illinois law governs disputes arising out of the Policy. Clarendon argues that under Illinois law, Jai Thai's breach voided the Policy and cut off its duty to defend or indemnify as a matter of law. Clarendon contends that the same conclusion would obtain if the court applied Washington law, because it can demonstrate that Jai Thai's breach prejudiced it as a matter of law.

On the record before the court, there is no reason to apply Illinois law. In deciding this, the court makes no determination of whether the Policy's choice-of-law clause is valid, or whether it should apply under these circumstances. Because the court exercises diversity jurisdiction in this case, Washington's choice-of-law rules apply. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). The threshold question in a Washington choice-of-law analysis is whether there is a conflict between Washington law and the state's law on which the party seeks to rely. *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1120 (Wash. 2007). Although Clarendon occasionally notes differences between Washington law and Illinois law, it does not believe these differences would lead to a different outcome in this dispute. Pltf.'s Mot. at 10 ("[T]he application of either Washington or Illinois law leads to the same conclusion – that there is no coverage and no duty to defend . . . ."), 15 ("[E]ven if the Court determines that Washington law applies in this instance the outcome should be the same."). The court notes, moreover, that neither Clarendon nor Jai Thai acknowledges RCW 48.18.200, which voids any clause in an insurance policy "delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state" that requires the policy "to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country." Only the court's finding that no one has demonstrated a conflict of law prevents it from ordering

ORDER – 7

Clarendon to show cause why RCW 48.18.200 does not void the Policy's choice-of-law clause. The court will apply Washington law in this action.

### 3. Clarendon Is Liable Only to the Extent That It Would Have Been Liable But For Jai Thai's Breach of the Security Guard Clause.

Clarendon contends that Jai Thai's breach of the policy means that it has neither a duty to defend nor a duty to indemnify Jai Thai. Pltf.'s Mot. at 1, 19. Reaching back to 1910, it relies on *Port Blakely Mill Co. v. Springfield Fire & Mar. Ins. Co.*, 110 P. 36 (Wash. 1910). In *Port Blakely*, the court addressed the alleged breach of a provision in an insurance policy requiring the insured sawmill to maintain a sprinkler system. *Id.* at 37 (considering clause that stated "Warranted by the assured that due diligence be used that the automatic sprinkler system shall at all times be maintained in good working order."). The insurer sought to rely on the provision to void the policy in the wake of the sawmill's claim for damages arising from a fire. *Id.* Although the sawmill had temporarily shut down a segment of the sprinkler system to expand it to a new portion of the sawmill, the sprinkler system was fully operational when the fire occurred. *Id.* at 38 ("[I]t must be conceded, that . . . the sprinkler system was in operation at the time of the fire; that the violation of the [insurance] contract, if there was any violation, was not the cause of the fire, and that the fire did not even originate in the sprinkler division where the repairs had been made.").

Nonetheless, the insurer advocated "the hard and inflexible rule" that even a cured breach of the sprinkler provision voided the policy. *Id.* It argued that the sprinkler provision "amounted to a warranty or a statement of a condition precedent, a temporary violation of which would preclude a recovery, even though it affirmatively appear [sic] that such temporary suspension was not in existence at the time of the fire and could not possibly have been the cause of the fire." *Id.*

In a lengthy discussion of Washington and other states' precedents, the *Port Blakely* court rejected the insurer's contention. First, it noted that the position was

ORDER – 8

"diametrically opposed to the general rule that only such damages can be recovered from the breach of a contract as are shown to be the result of such breach." *Id.* Second, the court relied on the principle that a contract "should not be construed as to work a forfeiture of either party's rights . . . unless it plainly appears that such was the intention of the contracting parties." *Id.* It distinguished cases in which a policy was void because the insured had made material representations in applying for the policy. *Id.* at 39. Those cases involved misrepresentations about "the reputation and character of the party upon whom the risk was placed," a "continuing risk running throughout the life of the insurance." *Id.* The sprinkler provision, by contrast, was such that "if there had been a violation of a condition at some time past, such violation had ceased at the time of the loss, and could not possibly, in any event, have had any effect on the loss." *Id.*

*Port Blakely* requires courts to consider an insurance clause holistically to determine if a breach of the clause is intended to void a policy. Words like "warranty" or "warranted" are not dispositive. *Id.* at 39, 41. Instead, the breach of a clause will not be construed to void the policy if there is "reason to suppose that such was not the clear understanding of the parties." *Id.* at 40. Whether a breach voids a policy will "depend on the form of expression used, the apparent purpose of the insertion, and sometimes upon the connection or relation to other parts of the instrument." *Id.* Constructions that void the policy are disfavored. *Id.* at 41 ("[W]here there is any doubt as to whether a statement in an insurance policy is an express warranty, the court should lean against that construction which imposes upon the assured the obligation of a warranty."), 42 ("[T]he court should lean against that construction which imposes upon the assured the obligations of a warranty."). Only where a clause unmistakably designates that its breach renders the policy void will the court construe it as such, and even then a breach of the clause "merely suspends" the policy while the insured is in breach. *Id.* at 39, 45.

The court concludes that a breach of the Security Guard Clause does not void the Policy. The only language that would support this strict construction is the introduction

ORDER – 9

to the "Breach of Representations and Warranties Endorsement" of which the Security Guard Clause is a part. The introduction states that a "breach of any of the following representations and warranties will result in this policy not applying to any 'claim' or 'suit' brought hereunder." Policy, Endorsement MWA220, at 1. Standing alone, this language might counsel in favor of the construction Clarendon advocates, but a review of the enumerated "representations and warranties" shows otherwise. The Security Guard Clause is the final entry in a list of twelve conditions, including the insured's agreement to comply with state and local fire codes, to serve alcohol in compliance with state and local law, not to permit "live entertainment . . . except for karaoke," not to have a "dance floor," and not to serve "raw seafood" (including, but not limited to, shellfish). *Id.* It strikes the court as decidedly unlikely that the parties intended that a breach of any of these provisions would void the policy. Imagine, for example, that the assault had occurred during "Sushi Night" rather than Eastern European Night. Would Clarendon insist that it had no obligation to cover Jai Thai for an unrelated tort committed on the premises merely because Jai Thai customers were served with spicy tuna rolls? Such a construction is absurd, in the court's view, but flows naturally from Clarendon's insistence that a breach of any of the representations and warranties voids the Policy. The nature of the representations and warranties counsels sharply against construing them as conditions whose breach would work a forfeiture of the Policy.

Instead, the court concludes that a breach of the Security Guard Clause merely entitles Clarendon to damages flowing from the breach. This is consistent with *Port Blakely*, where clauses whose breach does not void the policy nonetheless entitle the insurer to avoid damages caused by the breach. For example, the court remarked that had the sawmill been in breach of the sprinkler provision at the time of the fire, and the fire occurred "during the continuance of the increased risk and in consequence of it," then "the insured could not have recovered at all." *Id.* at 44. Absent policy language and

ORDER – 10

circumstances not present in this case, the court holds that the Policy is not void or even suspended merely because Jai Thai violated the Security Guard Clause.

The court's conclusion is not only consistent with *Port Blakely*, but with more recent Washington authority. The court does not fault Clarendon for relying on *Port Blakely*, which has not been questioned in the 99 years since it was decided. Moreover, *Port Blakely* is the most recent authority of which the court is aware that discusses the consequences of the breach of a provision requiring the insured to maintain certain conditions to reduce risk.[3] More recent Washington authority focuses instead on breaches of clauses that require certain conduct from the insured *after* it has suffered a loss. In *Oregon Auto. Ins. Co. v. Salzberg*, 535 P.2d 816, 819 (Wash. 1975), the Washington Supreme Court adopted a rule requiring the insured to show prejudice before relying on the breach of a clause requiring the insured to cooperate with the insurer in adjusting losses. That court concluded that "the release of an insurer from its obligation without a showing of prejudice to it should depend upon the legalistic conundrum of whether the cooperation clause is an express condition precedent or only a covenant." *Id.* In other words, the *Salzberg* court favored the insured more than the *Port Blakely* court, because it required proof of prejudice regardless of whether the insured's obligation was a condition precedent to coverage. Moreover, the burden was on the insurer to show that it was prejudiced. *Id.*

Since *Salzberg*, Washington courts have adhered to the actual prejudice rule, albeit in the context of clauses that affected an insured's obligations after suffering a loss. In *Mutual of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 876 (Wash. 2008), the court observed that the prejudice standard applies not only to cooperation clauses, but to provisions requiring an insured to promptly notify the insured of covered losses and

---

[3] The Security Guard Clause is not directly analogous to the sprinkler clause in *Port Blakely* or to other policy provisions that require risk-reducing conduct by the insured. The Policy does not mandate that the insured hire security guards, it merely requires that if the insured hires security guards, it ensure that they provide specified additional insurance. Indeed, assuming that security guards generally reduce risk, the Policy provides an incentive for the insured *not* to hire them.

ORDER – 11

clauses requiring the insurer's consent before the insured settles a claim. Indeed, Clarendon cites several similar cases in its motion, appearing to concede that it is obligated to show that it suffered actual and substantial prejudice from Jai Thai's breach of the Security Guard Clause. Pltf.'s Mot. at 15-16.

The pending motion does not require the court to decide whether to apply a more modern "actual prejudice" standard or the *Port Blakely* rule limiting the insurer to avoiding damages flowing from the breach of the policy. Indeed, it is possible that the two approaches are not substantively different.[4] For reasons the court will discuss in the following subsection, the outcome of this motion is the same under either standard.

### 4. The Evidence Does Not Permit the Court to Conclude that Clarendon has No Liability Under the Policy as a Matter of Law.

On the evidence Clarendon has provided, the court cannot determine to what extent Jai Thai's breach of the Security Guard Clause limits Clarendon's liability. This is so for two reasons: one legal and one factual. Because Clarendon did not offer a construction of the Security Guard Clause in its motion, it is uncertain what would have been required of Jai Thai in order to comply with the Clause. Clarendon insists that additional insurance that complied with the Clause would have rendered the Policy excess insurance and relieved it of its duty to defend and its duty to offer primary indemnification, but it does not offer argument showing that the Clause should be interpreted to match its assertion. Rather than supply either Jai Thai or Clarendon with arguments that neither of them have yet made, the court merely notes that there is room

---

[4] The recent focus on prejudice to the insurer arising from a policy breach rather than the consequences of the breach under ordinary contract law perhaps reflects that insurance policies are not ordinary contracts:

> [I]nsurance policies, in fact, are simply unlike traditional contracts, *i.e.*, they are not purely private affairs but abound with public policy considerations, one of which is that the risk-spreading theory of such policies should operate to afford to affected members of the public – frequently innocent third persons – the maximum protection possible consonant with fairness to the insurer.

*Mutual of Enumclaw Ins. Co.*, 191 P.3d at 874 (quoting *Salzberg*, 535 P.2d at 819).

ORDER – 12

for debate about what an insurance policy that complied with the Security Guard Clause would have covered, and what effect it would have had on Clarendon's duties.

There is no room for debate, however, that the current record is consistent with the possibility that at least a portion of the loss for which Jai Thai seeks coverage was not affected by the breach of the Security Guard Clause. For example, the state court complaint (DeWeese Decl., Ex. 1) alleges that Jai Thai employees contributed to the assault by continuing to serve alcohol to the assailants after they were plainly intoxicated, and that Jai Thai employees failed to render aid promptly to either of the victims after the assault. Proof of these allegations might demonstrate that some of the loss is not affected by the breach of the Security Guard Clause, because it was caused by conduct by Jai Thai employees that would not have been covered by an additional insurance policy that complied with the Clause.

In discussing these possibilities, the court emphasizes that it reaches no conclusions about the extent to which Clarendon is or is not liable. Indeed, construction of the Security Guard Clause and proof about the causes of the loss may show that all of the loss for which Jai Thai seeks indemnity and defense costs would have been covered by another policy but for its breach of the Security Guard Clause. On this record, however, the court cannot conclude as a matter of law to what extent Jai Thai's breach limits Clarendon's duty to defend and duty to indemnify. The court denies Clarendon's motion on that basis.

**C.     The Court Grants Defendants Leave to File an Amended Complaint.**

About a month after Jai Thai settled the state court lawsuit, Defendants filed a motion to amend their answer to assert counterclaims against Clarendon based on allegations that Clarendon did not properly provide a defense to Jai Thai. Clarendon does not oppose the motion to amend, provided the court continues the case schedule by at least six months to permit additional discovery on the counterclaims. Defendants have no objection to the continuance.

ORDER – 13

The court will grant a reasonable continuance of the trial schedule, but is skeptical that six months is necessary. The pleadings in the motion to amend were filed in early March 2009. Clarendon has known since at least January 2009 that Defendants intended to challenge the manner in which it provided a defense for Jai Thai, because Jai Thai revealed that position in its Rule 56(f) request. Jai Thai, for its part, must have known long before January that it intended to challenge Clarendon's provision of a defense in the state court lawsuit. That the state court lawsuit only settled in February would seem to make little difference to Defendants' counterclaims. By now, the parties should have completed substantial discovery on the subject matter of the counterclaims. For that reason, the court questions why a six-month continuance is appropriate. The court therefore directs the parties to meet and confer to discuss what continuance they believe is appropriate. They may then file a stipulation requesting the continuance, but if the continuance is for more than two months, they must explain in detail why the delay is necessary, including an explanation of their efforts to date to complete discovery. The parties must file their stipulation by June 18.

### IV. CONCLUSION

For the reasons stated above, the court GRANTS Clarendon's summary judgment motion (Dkt. # 12) to the extent it seeks a ruling that Jai Thai breached the Security Guard Clause, and DENIES it in all other respects. The court GRANTS Defendants' motion to amend their answer (Dkt. # 21), and directs them to file an amended answer by June 12, 2009. The parties must meet and confer regarding a new case schedule, and shall submit a stipulation in compliance with this order no later than June 18, 2009.

DATED this 4th day of June, 2009.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 14